IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MELISSA B.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 6:22-cv-00568-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Melissa B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On March 18, 2018, Plaintiff filed an application for supplemental security income alleging disability beginning on January 1, 2011. Tr. 13. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative Law Judge ("ALJ") on March 3, 2021. *Id.* On May 4, 2021, the ALJ issued a decision finding Plaintiff not

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

disabled. Tr. 21. On February 11, 2022, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id*. at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id*. at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of March 18, 2019. Tr. 15.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the knee; obesity; and diabetes mellitus. Tr. 15. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional restrictions: she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and she can occasionally kneel or crawl. Tr. 17

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 19. The ALJ found at step five that Plaintiff was capable of performing work that exists in significant numbers in the economy as a kitchen helper, hospital cleaner, or sandwich maker. Tr. 20. As a result, the ALJ found that Plaintiff was not disabled. Tr. 20-21.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; and (2) improperly discounting medical opinion evidence.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek

treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff lives with her two sons. Tr. 39. Plaintiff has a driver's license and does her own driving. *Id.* Plaintiff works as a caregiver for eighteen hours per week at below the substantial gainful level. Tr. 35. As a caregiver, Plaintiff assists her clients while walking and prepares meals for them. Tr. 40-41. Plaintiff does not do any other household chores for her clients. Tr. 41. Plaintiff clarified that when walking with her clients, she never has to lift them and that her client is not prone to falls, although the purpose of her walking with them is "in case she happens to fall or stumble." Tr. 42. Plaintiff temporarily increased the number of hours she worked as a caregiver in 2020 but found that she was unable to sustain the increased work. Tr. 44. Plaintiff takes breaks at her work and spends most of the time at work sitting down. Tr. 45. Plaintiff did not believe that she could sustain an eight-hour day, testifying "I just think that's too long; I couldn't do it." Tr. 47.

Plaintiff experiences hip and back pain, which are exacerbated by activities like standing at the sink. Tr. 44. Plaintiff estimated that she could lift or carry between fifteen and twenty points. *Id.* Plaintiff testified that attempting to lift or carry a greater weight will cause pain her hips and lower back. Tr. 45. Plaintiff takes Tylenol for her pain. Tr. 48.

Plaintiff testified that she had no limitations associated with her diabetes and that she simply watches what she eats. Tr. 46.

Plaintiff experienced an increase in her depression when she worked full time, which she associated with being away from home. Tr. 46. Plaintiff testified that changing her medication improved her memory problems. *Id.* Plaintiff takes daily medication for her mental health conditions. Tr. 51.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptom; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 18.

First, the ALJ found that Plaintiff's testimony was not fully supported by the objective medical evidence. Tr. 18-19. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, a conflict between a claimant's testimony and the objective medical evidence is a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the medical examination of Plaintiff revealed normal range of motion of all joints, negative straight leg raise tests, no joint instability, and normal muscle bulk and tone. Tr. 606-07. Medical imaging also revealed only mild degenerative joint disease, mild degenerative disc disease, and mild lumbar facet arthropathy. Tr. 600; *see also* Tr. 966 (September 2015, finding "mild degeneration of the right sacroiliac joint," "Mild osteophytes" noted in the knee). On this record, the Court

concludes that the ALJ properly considered the objective medical evidence showing normal function or "mild" degenerative disc and joint disease when weighing Plaintiff's subjective symptom testimony.

Next, the ALJ considered Plaintiff's activities of daily living. Tr. 19. As noted, a claimant's daily activities are a valid consideration in assessing subjective symptom testimony. *Ghanim*, 763 F.3d at 1163. Here, the ALJ specifically noted Plaintiff's work as a part-time caregiver. Tr. 19. "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Despite Plaintiff's allegations of disabling pain, she testified, and the record supports, that she worked as a caregiver for elderly clients part-time and, for a period, was working six days per week. Tr. 657 (September 2018, Plaintiff reported working as a "caregiver for a 98/yo man 21 hours a week,"); 904 (October 2020, Plaintiff "Working as a caregiver, enjoys her job and states she likes working,"); 929 (October 2020, Plaintiff "working 6 days/wk as a caregiver for 2 elderly women, enjoys work."). On this record, the Court concludes that the ALJ reasonably considered Plaintiff's daily activities and particularly her part-time employment in assessing her subjective symptom testimony.

Finally, the ALJ also noted Plaintiff's failure to follow prescribed courses of treatment. Tr. 18 (noting the Plaintiff "admitted at the time that her diet was 'terrible' and that she had not been exercising as her treatment provider has directed."). An unexplained or inadequately explained failure to follow a prescribed course of treatment is a valid consideration in weighing subjective symptom

testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ's conclusion is supported by the record. Tr. 1123 (February 2021, Plaintiff reported to her treatment provider that she "has not been exercising" and that although "[s]he has been through diabetic education classes," she "states that her diet is terrible where she eats 'everything' and 'anything.'"). On this record, the ALJ reasonably considered Plaintiff's failure to follow prescribed courses of treatment.

The Court concludes that the ALJ did not err by discounting Plaintiff's subjective symptom testimony.

## II.  Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in discounting the medical opinion of Derek Leinenbach, M.D. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id*. at 791 (emphasis added, internal quotation marks and citations omitted). For supportability, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for

consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, Dr. Leinenbach examined Plaintiff in September 2014 in connection with a previous application for disability benefits and prepared a functional assessment of Plaintiff. Tr. 604-608. In the assessment, Dr. Leinenbach found that Plaintiff could stand or walk without interruption for two hours in an eight-hour day, "limited by obesity, deconditioning, right knee pain, and lumbago." Tr. 607. Dr. Leinenbach believed that Plaintiff could stand or walk for a total of four to six hours in an eight-hour day. *Id*. Plaintiff could sit for a total of six to eight hours in an eight-hour day and could sit without interruption for two hours in the same period. *Id*. She could lift or carry twenty pounds occasionally and ten pounds frequently, "limited by deconditioning, right knee pain, and lumbago." Tr. 608. She could climb and stoop occasionally and she could kneel occasionally. *Id*. She can reach, handle, finger, and feel frequently. *Id*. She "should not work at unprotected heights due to an antalgic gait," and should "limit work around dust, perfumes, gases, or other pulmonary irritants due to asthma." *Id*.

The ALJ found Dr. Leinenbach's opinion unpersuasive based on his own examination notes, which showed that "[d]espite the claimant's morbid obesity and musculoskeletal discomfort, she exhibited normal motor strength, sensation, and reflexes." Tr.19. "The claimant's gait was mildly antalgic—but she walked around

the room without assistance and was able to sit comfortably. She could walk on her heels and even perform a partial squat." *Id*. "Straight-leg raise testing was negative and her range of motion was entirely within normal limits." *Id*. This is consistent with the notes from Dr. Leinenbach's exam. Tr. 606 (showing normal range of motion, negative straight leg raise test); 605-06 (Plaintiff had "mildly antalgic" gait, but that she walked into the examination room without assistance, sat comfortably, removed and replaced her shoes without assistance, and got on and off the examination table without assistance,); 607 ("Muscle strength is 5/5 in the bilateral upper and lower extremities," and "Muscle bulk and tone are normal throughout."). In addition, the The ALJ reasonably concluded that the limitations assessed by Dr. Leinenbach were not supported by his recorded exam findings.

With respect to consistency, the ALJ noted that "[m]edical evidence since the claimant's application date documents no mobility problems," and Plaintiff's "ongoing work as a caregiver suggests she remains able to ambulate effectively while supporting another person." Tr. 19. Dr. Thomas Davenport offered an opinion of Plaintiff's capabilities in September 2019 and noted that Dr. Leinenbach's opinion was given "well outside of adjudicative period," and that, while it limits Plaintiff's function due to obesity and antalgic gait, "Current records indicate that clmt has normal gait, and has lost weight." Tr. 89. In April 2020, Dr. James Hazelwood also offered an opinion of Plaintiff's limitations in which he noted that Dr. Leinenbach's opinion was "without substantial support from the medical source who made it," and was "an overestimate of the severity of [Plaintiff]'s restrictions/limitations." Tr. 107.

The Court concludes that the ALJ reasonably weighed Dr. Leinenbach's opinion for consistency with respect to both the other contrary medical opinions and Plaintiff's work as a caregiver.

On this record, the Court concludes that the ALJ reasonably discounted Dr. Leinenbach's opinion.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___19th___ day of December 2023.

                                              /s/Ann Aiken
                                              ANN AIKEN
                                              United States District Judge